IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30322
Summary Calendar

_____

ROBIN SCOTT EVANS,

Plaintiff-Appellant,

versus

MCKINNEY MARINE INCORPORATED, ET AL.,

Defendants,

FLORIDA MARINE TRANSPORTERS,
INC., SHELL OIL COMPANY,
SHELL OIL PRODUCTS COMPANY, SHELL
CHEMICAL COMPANY, and M & M TOWING
COMPANY, INC.

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana
(96-CV-132)

_____
September 10, 1997

Before REAVLEY, JOLLY and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

Robin Evans appeals a summary judgment entered against him

in his personal injury suit against Shell Oil Company, Shell Oil

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Products Company, Shell Chemical Company (collectively Shell), Florida Marine Transporters, Inc., and M & M Towing Company. The judgment is affirmed as to M & M Towing because Evans abandons his claim against that defendant on appeal.

As to defendant-appellee Florida Marine, the judgment is affirmed essentially for the reasons stated by the district court in its memorandum order granting summary judgment. The court correctly noted that under modern summary judgment practice "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[2] After an independent review of the record, we agree with the district court that Florida Marine was entitled to summary judgment under that standard.

Evans was working on a barge owned by Florida Marine. The immediate cause of his injury was that he climbed over a vapor line and tripped on an electrical conduit. Photographs in the record show that the vapor line and conduit are open and obvious tubes running along the deck. At the time Evans was moving to adjust lines securing the barge to an adjacent barge. Evans argues on appeal that he needed to adjust the lines because a Shell dockman directed the unloading of the adjacent barge first,

_____

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

2

causing it to rise in the water, rather than unloading the barges simultaneously as is the customary practice. He also argues that the barges were not unloaded simultaneously because a pump was malfunctioning on the Florida Marine barge.

Under maritime law the plaintiff must establish that the defendant's negligence was the legal cause of the plaintiff's injury.[3] Legal cause "is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury."[4] We agree with the district court that, even if Florida Marine was negligent in maintaining the pump, a rational jury could not find that such negligence was a legal cause of Evans' fall. If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted.[5]

As to Shell, the owner of the dock, the district court reasoned that Evans had made no showing that Shell owed him any duty or breach of such duty. We have held that the federal maritime doctrine of seaworthiness does not extend to the dock

---

[3] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

[4] *Id*. (citations omitted).

[5] *Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 174 (5th Cir. 1994).

owner, and that the dock owner has no duty under maritime law to assist in the mooring of the vessel.[6]

Conceivably Shell owed Evans a duty under state law. We have recognized that "maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law,"[7] and that "a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law."[8] We have noted that Louisiana law imposes on a dock owner a duty to an invitee to provide a reasonably safe wharf or dock.[9] Evans argues that Louisiana courts have recognized that the duty of a business or land owner owed to invitees can extend to cover dangerous conditions on adjacent property.

Assuming that Shell owed a duty to Evans under Louisiana law, however, we conclude that Evans' claim against Shell fails for lack of causation. Louisiana law, like federal maritime law, requires that the defendant's negligence be the legal cause of the injury. "Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such

---

[6] *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332, 335 (5th Cir. 1993).

[7] *Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir. 1983) (quoting *Alcoa Steamship Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967)).

[8] *Florida Fuels*, 6 F.3d at 332.

[9] *Id*. at 333.

4

relation must be substantial in character."[10]  Legal cause has

been defined as "'any cause which, in a natural and continuous

sequence, unbroken by any efficient, intervening cause, produces

the result complained of and without which the result would not

have occurred'. . . .  [W]hen an accident results from two

negligent acts, 'one more remote and one an intervening cause,

the presence of the intervening cause prevents a finding of

liability on the one responsible for the more remote cause.'"[11]

Again, we conclude that a rational jury could not find that

Shell's decision to unload the adjacent barge first was a legal

cause of Evans' injury.

Evans argues that disposition by summary judgment was

inappropriate because his suit is one for negligence involving

fact issues of proximate cause and the standard of care.  We have

in the past stated that summary judgment is rarely appropriate in

negligence cases.[12]  However, sitting en banc in *Little v.*

*Liquid Air Corp.*,[13] we rejected the notion that summary judgment

---

[10]  *Graham v. Amoco Oil Co.*, 21 F.3d 643, 648 (5th Cir. 1994) (quoting *Sinitiere v. Lavergne*, 391 So.2d 821, 825 (La. 1980)).

[11] *Graham*, 21 F.3d at 648 (quoting *Sutton v. Duplessis*, 584 So.2d 362, 365-66 (La. Ct. App. 1991)).

[12] *E.g., Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990); *Trevino v. Yamaha Motor Corp., U.S.A.*, 882 F.2d 182, 184 (5th Cir. 1989).

[13] 37 F.3d 1069 (5th Cir. 1994).

analysis should turn on the type of case.[14]  We stated that dicta to the contrary in earlier cases is "essentially empty chatter . . . inasmuch as we have never reversed a district court's entry of summary judgment solely because it involved a particular class of allegations.  In any event, we reject any suggestion that the appropriateness of summary judgment can be determined by such case classification."[15]

AFFIRMED.

---

[14] *Id*. at 1076–77.

[15] *Id*. at 1076 n.14